UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | NO. 3:15-CR-003-GFVT-MAS-1 |
| GREGORY HEDGES, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

**REPORT & RECOMMENDATION**

The Court, on referral from the District Court, reviews reported violations of supervised release conditions by Defendant Gregory Hedges ("Hedges"). Upon consideration of the violation report, the probation officer's endorsement of inpatient treatment, and the parties' suggested sentence, the Court recommends that the District Court revoke Hedges' supervised release, sentence him to eight months' imprisonment, and require him to complete an inpatient treatment program.

**I.    CASE BACKGROUND**

On June 22, 2016, United States District Judge Gregory F. Van Tatenhove sentenced Hedges to a 48-month term of imprisonment followed by a 3-year term of supervised release upon his plea of guilty to the conspiracy to commit wire and mail fraud. [DE 215].

**II.    SUPERVISED RELEASE HISTORY**

Hedges' supervision and alleged violations requires significant explanation for context. Hedges' original term of supervision began on April 17, 2020. Hedges did not have any violations

for nearly one year until the United States Probation Office ("USPO") issued a Supervised Release Violation Report on February 17, 2021. Since then, however, Hedges has repeatedly violated his conditions of supervise released.

First, USPO reported that on February 14, 2021, Hedges was arrested in Lexington, Kentucky and charged with Operating a Motor Vehicle with Alcohol Concentration of or above 0.08, Aggravating Circumstances. On March 24, 2021, after Hedges' initial appearance on the February 26, 2021, violation report but before his final hearing, USPO issued an Addendum to the Supervised Release Violation Report, charging Hedges with testing positive for methamphetamine, which Hedges then admitting to using. Hedges stipulated to the charged violations at the final hearing on March 26, 2021. The undersigned recommended the district court revoke Hedges' supervision for a period of up to 30 days, during which time he would be incarcerated until he could be placed in an inpatient substance use disorder treatment facility. His new term of supervision included the special condition that Hedges reside in an inpatient substance abuse treatment program for three (3) months. Judge Van Tatenhove adopted that recommendation, and on April 9, 2021, Hedges was admitted to WestCare, an inpatient treatment facility.

Second, after only nine days at WestCare, Hedges requested to be transported to the Pikeville Medical Center emergency room by ambulance due to leg soreness and swelling. The following day, when Hedges had not returned to WestCare, USPO called the Pikeville Medical Center to inquire about his condition. The medical staff informed USPO that Hedges had not been admitted to the hospital and had been discharged from the emergency room approximately five hours after he arrived. WestCare terminated Hedges from its program for leaving treatment. Hedges voluntarily returned to WestCare on April 20, 2021, and was taken into custody. Hedges

stipulated to this second alleged supervised release violation. The undersigned recommended Hedges' term of supervision be revoked and that he be sentenced to time served and a 24-month term of supervised release to include three months of inpatient substance use treatment, followed by three months' residence at a halfway house with outpatient substance use treatment, to be followed by the remainder of his term of supervised release with all of the same conditions Judge Van Tatenhove originally ordered. Judge Van Tatenhove adopted that recommendation, and on June 22, 2021, Hedges was once again admitted to WestCare for inpatient substance use disorder treatment.

With the two prior violations for context, the Court turns to Hedges' third and current violation.

### III.    THE INSTANT VIOLATIONS

During his second brief stint at WestCare, Hedges lasted only ten days before being discharged. USPO reported the discharge as Hedges' third violation of supervised release on July 6, 2021. Hedges was finally arrested on the federal warrant incident to an unrelated traffic stop on August 23, 2021. That traffic stop resulted in another alleged violation of his supervised release, because Hedges was cited for the state crime of driving on a suspended license, among other minor traffic offenses.[1]

The Court conducted an initial appearance on the instant supervised release violations pursuant to FED. R. CRIM. P. 32.1 on September 15, 2021. [DE 419]. The Court advised Hedges of his constitutional rights, including his rule-based right to a preliminary hearing. FED. R. CRIM. P. 32.1(b)(1). Hedges competently, knowingly, voluntarily, and intelligently waived his right to a preliminary hearing and detention hearing. [DE 419].

---

[1] Hedges' first mandatory condition was "The defendant shall not commit another federal, state, or local crime." [DE 412 at Page ID # 1525].

3

A.   **CONTESTED VIOLATION #1: LEAVING WESTCARE**

At the final hearing on October 18, 2021, Hedges contested the violation of absconding from treatment. The burden was on the United States to prove by a preponderance of the evidence that Hedges violated the terms of his supervision. The United States introduced the testimony of two direct witnesses and one rebuttal witness. Hedges presented two witnesses and testified on his own behalf to refute the testimony of the United States' witnesses.

Tommy Ratliff, a counselor at WestCare, testified for the United States at the final hearing. He stated that he received a phone call on July 2, 2021, from employees at a convenience store near the WestCare facility, stating that they believed someone from WestCare had come to the convenience store, was asking for a ride, and had posed as a federal agent asking about drug houses nearby. The employee stated this individual was an older male that the employee believed was a WestCare resident who had left the facility. Mr. Ratliff then conducted an emergency count of the residents present at the facility and determined Hedges was missing. Mr. Ratliff testified Hedges was discharged from WestCare for leaving the facility without permission. Probation Officer Melissa Markwell testified that Justin Kerr, Program Coordinator/Counselor at WestCare, notified her that Hedges had absconded. He issued a discharge summary (attached to the July 6, 2021, violation report) that stated after his telephone call with Officer Markwell discussing Hedges' disappearance from WestCare, "we decided to discharge Mr. Hedges from treatment because he was no longer present at WestCare." [*See* Supervised Release Violation Report dated July 6, 2021 and attachments].

Hedges testified and told a different story. Per Hedges, he was discharged after he presented a prescription from his doctor stated he needed bed rest for two weeks and light work. Hedges testified that Justin Kerr told him "we're not doing this," meaning that the facility would be unable to accommodate the doctor's orders. Hedges testified Mr. Kerr told him that he would

4

call Officer Markwell and discharge Hedges. Officer Markwell's testimony supported, in part, this version of events. Officer Markwell testified that Mr. Kerr told her that if Hedges had to remain on bedrest for two weeks he would have to discharge Hedges from the program.

Hedges testified upon hearing this statement—effectively an ultimatum—he decided to leave WestCare.[2] Hedges testified he went to a nearby home and used the telephone to call an ambulance to take him to the hospital for his ongoing leg issues.[3] Hedges said he spent several hours in the hospital that evening and was discharged with an orthopedic boot.

Hedges' whereabouts were unknown to USPO from his departure from WestCare until he was arrested incident to the traffic stop on August 23, 2021. It is undisputed that Hedges did not reach out to Officer Markwell at any time between July 2, 2021 and August 23, 2021. Officer Markwell also testified at the hearing and confirmed that WestCare employees told her that Hedges had absconded from the facility, had been discharged, and had not contacted her after absconding.

Hedges stated he did not report to USPO after leaving WestCare because he believed if he did, he might have to return to WestCare where he "did not feel comfortable." Upon further questioning, Hedges described that during his first stint at WestCare in April 2021, he was sexually assaulted. When he returned to WestCare on June 22, 2021, the individual who allegedly perpetrated the assault was still at WestCare. Hedges described to the Court his extreme discomfort in having to face this individual, and that he did not feel that he could continue to reside in that circumstance. Further, the undisputed testimony from both Hedges and WestCare Program Director Jeremy Johnson was that when Hedges reported the assault to WestCare staff, the staff

---

[2] Officer Markwell testified that Hedges said that rather than be discharged, he would opt to stay at WestCare. The Court took this to imply Hedge would have to ignore the doctor's orders if he wished to remain at WestCare.

[3] It is undisputed that Hedges has several significant health issues, including the continuing issue with his leg discussed during his prior supervised release violation hearings.

did not investigate the allegation. Mr. Johnson testified that WestCare staff did not believe the allegation and therefore did not pursue it or investigate it in any manner.[4] Neither the Court nor USPO was aware of the assault allegation until the final hearing on the instant supervised release violations.

B.   **CONTESTED VIOLATION #2: TRAFFIC STOP ON AUGUST 23, 2021**

Hedges likewise contested the violation addendum that alleged he committed the state crime of driving on a suspended license.

Officer Matthew Dement testified regarding the traffic stop on August 23, 2021. Officer Dement stated Hedges' committed minor traffic infractions resulting in the stop. Upon stopping Hedges' vehicle, Officer Dement discovered Hedges did not have a valid driver's license. Hedges' license had been suspended because of his pending driving under the influence charge that was the basis for Hedges' first supervised release violation in February 2021. Officer Dement testified that Hedges had what appeared to be drug paraphernalia in his vehicle, though he was not charged with any drug-related crimes.

Hedges' argument, though difficult to parse, was that his license was not suspended because the suspension had expired; therefore, he did not commit a crime. Hedges did not contest the fact that he did not have a valid license at the time of the August 23, 2021, traffic stop because he had not paid the fee to have his license reinstated. Hedges argued, however, that driving after failing to pay the fee was somehow not a violation of KRS 186.620(2).

---

[4] Mr. Johnson testified that Hedges made the allegation during a "rant" immediately prior to leaving the facility. Hedges testified he made the assault allegation during his normal weekly meeting with Mr. Kerr. The Court notes that whether the allegation was made during a "rant" or not has no bearing on its potential veracity and should have been investigated regardless of Hedges' emotional state at the time he made the allegation.

## IV.    ANALYSIS

The Court has evaluated the entire record and the arguments presented at the final hearing. As explained below, the Court has determined the United States proved by a preponderance of the evidence that Hedges committed both violations.

**A.    THE UNITED STATES ESTABLISHED THE VIOLATIONS WITH PREPONDERANT EVIDENCE.**

Initially, there is no dispute that Hedges left WestCare on July 2, 2021; the question is whether he was discharged—constructively or otherwise—because of his medical needs, or if he chose to leave the facility. The weight of the evidence indicates Hedges absconded from the facility. Hedges matched the description of the individual at the convenience store spotted near in time to the time WestCare discovered Hedges missing. Hedges testified he (understandably) did not want to reside at WestCare. Hedges' failure to notify USPO of his whereabouts for nearly two months after his departure from WestCare undercuts his claim that he was actually or constructively discharged from the program. Absconding for two months is consistent with leaving WestCare of his own volition and knowing he had committed a supervised release violation in doing so. Considering the testimony and evidence in the record, the Court finds the United States established the violation by a preponderance of the evidence pursuant to 18 U.S.C. § 3583(e)(3).

As to the traffic charge, despite Hedges' arguments that his conduct on August 23, 2021 did not constitute a crime, the undisputed facts here are that Hedges operated a motor vehicle at a time his license had not been reinstated, a clear violation of Kentucky law. KRS 186.602(2) clearly makes it a Class B misdemeanor for any person "whose operator's license has been denied, canceled, suspended or revoked, or whose privilege to operate a motor vehicle has been withdrawn, [to] operate any motor vehicle upon the highways while the license is denied, canceled, suspended, or revoked or his privilege to operate a motor vehicle is withdrawn, **or the license has not been**

7

**applied for**." (Emphasis added). It does not matter what Hedges is ultimately charged with or whether he is charged in state court at all; for federal supervised release purposes the Court looks at the underlying *conduct*, not the state charges.[5] The underlying conduct was indisputably a state crime. Thus, the Court finds the United States also established the violation in the addendum by a preponderance of the evidence.

The Court Recommends a Sentence that

Absconding from WestCare and violating Kentucky law were both Grade C violations. The criminal history category established at sentencing was a Category III. The parties agree that the United States Sentencing Guidelines ("Guidelines") propose a sentence of 5 to 11 months, with a statutory maximum of 24 months. *See* 18 U.S.C. § 3583(e)(3). Should Hedges' supervised release be revoked, the Court can re-impose an additional term of supervised release of up to 36 months, less any term of imprisonment imposed upon revocation. *See* 18 U.S.C. § 3583(h).

The United States requested the Court impose a term of imprisonment at the top end of the Guidelines range or above. The United States argued that Hedges has had three violations in a short period of time, two of which included absconding from supervision. Hedges asked the Court for another opportunity to attend inpatient treatment, at a facility other than WestCare that he would personally fund.

In recommending a sentence, the Court must consider the nature and circumstances of Hedges' original conviction, the statutory factors in 18 U.S.C. § 3553 that are incorporated into §

---

[5] Guidelines § 7B1.1(a)(3) defines a Grade C Violations as including "**conduct** constituting (A) a federal state, or local offense punishable by a term of imprisonment of one year or less[.]" [5] Guidelines § 7B1.1(a)(3)(emphasis added). The Application Notes to § 7B1.1(a)(3) state that a "violation of this condition may be charged whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct." Guidelines § 7B1.1(a)(3), Application Note 1.

3583(e), and the Guidelines range. *See also United States v. Johnson*, 640 F.3d 195 (6th Cir. 2011). Hedges' original conviction involved a conspiracy to commit mail and wire fraud. Hedges admitted he was responsible for an intended loss of $444,435 as a result of his role in the conspiracy. The District Court imposed a 48-month term of imprisonment followed by a 3-year term of supervised release on his original conviction. [DE 215]. This was at the lowest end of the guideline range of 46 to 57 months on the fraud charge, and 9 months below USPO's recommended sentence of 57 months. S*ee* 18 U.S.C. § 3553(a)(6) (considering "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"). The Court also considers Hedges' prior sentences upon revocation. Hedges' Guidelines range for his first supervised release violations was 8 to 14 months imprisonment, but the Court sentenced him to a term of imprisonment not to exceed 30 days (until inpatient treatment was available). Hedges' Guidelines range for his second set of supervised release violations was 5 to 11 months imprisonment, but once again, the Court opted for a significantly lower sentence of time served (approximately two months). Both times, as mentioned, Hedges was required to complete an inpatient substance use treatment program that he did not finish either time.

      The record and proffer at the final hearing in March 2021 demonstrated that Hedges has struggled with substance use disorder for many years. He reported using alcohol and marijuana since he was a teenager, and using Xanax, morphine, and/or heroin during his period of state incarceration, until 2013 when he began using Suboxone. [*See* Presentence Investigation Report at 16]. At that time, he took responsibility for his methamphetamine use in March 2021 and represented to the Court that he has a substance use disorder and would benefit from intensive in-patient treatment. During the May 2021 final hearing, however, Hedges told the Court that he is

not a "meth addict." As the Court noted in its prior Report and Recommendation, Hedges' description of the events that led to his methamphetamine use in March 2021 does not conform to the sequence of events as described in the violations reports or the facts put forth by both Hedges and the United States during the March 2021 final hearing.

Officer Dement's testimony that Hedges had drug paraphernalia in his vehicle when he was stopped on August 23, 2021, further implies that Hedges has an ongoing substance use disorder. Although Hedges was not charged with a drug-related crime or supervised release violation, Officer Dement's testimony raises the concern that Hedges—considering his long history of substance use—may have once again been using controlled substances after he departed from WestCare in July. Hedges admitted in March 2021 that he has struggled with controlled substance use for many years and believes he would benefit from a treatment program. Hedges reiterated that statement during his final hearing on the instant violations. Though the Court has ordered Hedges to inpatient treatment twice, and twice Hedges has failed to complete the program, the Court continues to believe Hedges would benefit from an inpatient treatment program to address his substance use disorder.

Finally, the Court acknowledges that although Hedges bears complete responsibility for his actions and choices that led to the violations at issue, Hedges was not set up for success during his most recent term of supervision. Neither the Court nor USPO had knowledge of the sexual assault Hedges suffered during his initial stay at WestCare. The Court is not blaming Hedges for hesitating to speak publicly about his assault; however, had the Court and/or USPO known of the situation at WestCare, the Court would have ensured Hedges received treatment at another facility when his term of supervision was revoked in June. The Court regrets that Hedges ended up at a facility with his alleged assailant. That circumstance did nothing to assist Hedges in having

success on his most recent term of supervised release.[6] Additionally, Hedges has well-documented health issues that WestCare was apparently unable or unwilling to accommodate, but instead told him he would have to be discharged from the program if he wished to follow his doctor's orders for bedrest.

The Court has provided Hedges several prior leniencies with sentences at or below the lowest end of the Guidelines range (his original sentence and both prior revocation judgments). However, Hedges abused the Court's trust on supervised release in the past nine months by being cited for a DUI, testing positive for methamphetamine, absconding from WestCare twice, driving on a suspended license, and being caught with drug paraphernalia. The Court must impose a sentence in this instance reflective of the seriousness of Hedges' conduct, and sufficient to motivate Hedges to be successful on his next—and hopefully final—term of supervision. Nonetheless, Hedges, as noted, was not set up for success during this most recent term of supervision. Unbeknownst to USPO or the Court, Hedges was enrolled at an inpatient facility that could not accommodate his medical needs and would not respond to his report of sexual assault. While the Court does not excuse Hedges' conduct in absconding from WestCare, the scenario was far more complex than Hedges just deciding he no longer wished to comply with the program. Leaving WestCare was an unfortunate choice at the culmination of a series of unfortunate circumstances. Hedges' failure to contact USPO after leaving, however, was intolerable. The

---

[6] The Court is extremely concerned with WestCare's lackadaisical response (as described by WestCare's own Program Director) to Hedges' allegation of sexual assault in its facility. WestCare potentially put other residents and staff in danger by wholly ignoring a violent rape allegation. Additionally, the failure to take the allegation seriously enough to conduct even the most cursory follow-up investigation perpetuates a stigma against reporting assaults, especially for male assault victims, creates a chilling effect on reporting assaults at WestCare in the future, and potentially re-traumatizes an assault victim who decides to come forward. Such conduct, if born out in an investigation, is a possible violation of WestCare's contract with USPO and a violation of the Prison Rape Elimination Act.

Court cannot abide such an abuse of the Court's and USPO's trust, especially after the Court has provided Hedges two opportunities reside in a treatment facility rather than a prison.

Considering these facts, the Court recommends Hedges' term of supervision be revoked and that he be sentenced to a term of imprisonment of eight months. This is the middle of the Guidelines range and reflects the seriousness of Hedges' conduct in absconding and failing to contact USPO but recognizes the complicating and mitigating factors that led to that situation. The Court further recommends the District Court reimpose a 12-month term of supervised release to include six months of inpatient substance use treatment to be followed by the remainder of his term of supervised release with all of the same conditions Judge Van Tatenhove originally ordered. The Court's fervent hope is that Hedges will be placed in a treatment facility where he can address his substance use disorder as well as obtain mental health treatment, and that he will be successful during his new term of supervision. The Court finds this sentence is sufficient but not greater than necessary to punish and deter Hedges' conduct in violating his supervised release.

## V.  CONCLUSION

Accordingly, for the reasons stated herein, the Court **RECOMMENDS**:

(1) Hedges be found guilty of all violations;

(2) Hedges' supervised released be **REVOKED**;

(3) Hedges be sentenced to a term of imprisonment of **EIGHT MONTHS**;

(4) The Court re-impose supervised release for 12 months with all of the same conditions Judge Van Tatenhove originally proscribed, plus the following additional condition:

  a. six months residency at an inpatient substance abuse treatment program as determined by USPO.

Hedges preserved his right of allocution. Absent a waiver of allocution, this matter will be placed on Judge Van Tatenhove's docket for an allocution hearing upon submission.

12

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Entered this 1st day of November, 2021.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge