UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | NO. 3:15-CR-003-GFVT-MAS-1 |
| GREGORY HEDGES, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

**REPORT & RECOMMENDATION**

Defendant Gregory Hedges ("Hedges") has appeared before the undersigned on at least ten separate occasions since early 2021. *See* DE 375, 378, 379, 391, 398, 399, 419, 424, 470, 472. He is, once again, before the Court on alleged violations of his conditions of supervised release. Considering the current violation report and Hedges' tumultuous history on supervision, the Court recommends the Judge Van Tatenhove revoke Hedges' supervision, sentence him to eight months' imprisonment, and impose no further term of supervision to follow. The Court makes this recommendation after spending the past two years getting to know Hedges through his many court appearances and exhausting every possible avenue to assist his transition back to society and sobriety. This recommendation delivers consequences for Hedges' past choices and gives him a fresh start after his sentence to make his own choices on his own terms.

### I.   CASE BACKGROUND

On June 22, 2016, United States District Judge Gregory F. Van Tatenhove sentenced Hedges to a 48-month term of imprisonment followed by a 3-year term of supervised release upon

his plea of guilty to the conspiracy to commit wire and mail fraud. [DE 215]. Hedges was serving 96-year sentence in Tennessee state prison for 1st degree burglary, two counts of kidnapping, two counts of armed robbery, grand larceny, and aggravated assault at the time he committed his underlying federal offense. [Presentence Investigation Report at 14].

## II. SUPERVISED RELEASE HISTORY

Hedges' original term of supervision began on April 17, 2020. Hedges did not have any violations for nearly one year until the United States Probation Office ("USPO") issued a Supervised Release Violation Report on February 17, 2021. Since then, however, Hedges has repeatedly violated his conditions of supervise released.

First, USPO reported that on February 14, 2021, Hedges was arrested in Lexington, Kentucky and charged with Operating a Motor Vehicle with Alcohol Concentration of or above 0.08, Aggravating Circumstances. On March 24, 2021, after Hedges' initial appearance on the February 26, 2021, violation report but before his final hearing, USPO issued an Addendum to the Supervised Release Violation Report, charging Hedges with testing positive for methamphetamine, which Hedges then admitting to using. Hedges stipulated to the charged violations at the final hearing on March 26, 2021. The undersigned recommended the district court revoke Hedges' supervision for a period of up to 30 days, during which time he would be incarcerated until he could be placed in an inpatient substance use disorder treatment facility. His new term of supervision included the special condition that Hedges reside in an inpatient substance abuse treatment program for three (3) months. Judge Van Tatenhove adopted that recommendation, and on April 9, 2021, Hedges was admitted to WestCare, an inpatient treatment facility.

After only nine days at WestCare, Hedges requested to be transported to the Pikeville Medical Center emergency room by ambulance due to leg soreness and swelling. The following

2

day, when Hedges had not returned to WestCare, USPO called the Pikeville Medical Center to inquire about his condition. The medical staff informed USPO that Hedges had not been admitted to the hospital and had been discharged from the emergency room approximately five hours after he arrived. WestCare terminated Hedges from its program for leaving treatment. Hedges voluntarily returned to WestCare on April 20, 2021, and was taken into custody. Hedges stipulated to this second alleged supervised release violation. The undersigned recommended Hedges' term of supervision be revoked and that he be sentenced to time served and a 24-month term of supervised release to include three months of inpatient substance use treatment, followed by three months' residence at a halfway house with outpatient substance use treatment, to be followed by the remainder of his term of supervised release with all of the same conditions Judge Van Tatenhove originally ordered. Judge Van Tatenhove adopted that recommendation, and on June 22, 2021, Hedges was once again admitted to WestCare for inpatient substance use disorder treatment.

During his second brief stint at WestCare, Hedges lasted only ten days before being discharged. USPO reported the discharge as Hedges' third violation of supervised release on July 6, 2021, and the Court issued a warrant for his arrest. Hedges was finally arrested approximately seven weeks later during a traffic stop unrelated to the federal warrant. That traffic stop resulted in another alleged violation of his supervised release, because Hedges was cited for the state crime of driving on a suspended license, among other minor traffic offenses.[1]

At the final hearing on October 18, 2021, Hedges contested the violations. As outlined in more detail in the Court's Report and Recommendation at DE 426, the United States presented

---

[1] Hedges' first mandatory condition was "The defendant shall not commit another federal, state, or local crime." [DE 412 at Page ID # 1525].

3

testimony from USPO Melissa Markwell and WestCare counselor Tommy Ratliff to establish that Hedges had absconded from WestCare and consequently been discharged from the facility, in violation of his terms of supervision. The testimony presented was Hedges testified on his own behalf at this final hearing, stating that his physician had ordered him on bedrest for two weeks, and that WestCare told Hedges that if he wanted to comply with the doctor's order, they would have to discharge him from the facility for nonparticipation. [DE 426 at 1562-63]. Hedges testified upon hearing this statement, he decided to leave WestCare of his own accord, and not to contact his probation officer. After significant questioning, Hedges testified that he absconded because he was fearful USPO and/or the Court would send him back to WestCare, where, unbeknownst to the Court or USPO, he had been sexually assaulted in April 2021, and the perpetrator still resided there.[2]

Ultimately, the Court found that although Hedges had experienced extraordinary circumstances that contributed to his violations and was likely victim of both his alleged assailant and the systematic failing of WestCare, he was still responsible for his own conduct that led to the violations. The Court found the United States established the violations by preponderance of the evidence, recommended his supervised release be revoked and that Hedges be sentenced to a term of imprisonment of eight months with twelve months of supervision to follow, the first six of which to be spent at a residential inpatient substance abuse treatment program. Judge Van Tatenhove adopted those recommendations and sentenced Hedges accordingly. [DE 439].

---

[2] As the Court noted in its Report and Recommendation dated November 1, 2021, the undisputed testimony from both Hedges and WestCare Program Director Jeremy Johnson was that when Hedges reported the assault to WestCare staff, the staff did not believe the allegation and therefore did not pursue it or investigate it in any manner. [DE 426 at Page ID# 15-62-63].

Hedges was released from his eight-month revocation sentence to begin his fourth term of supervision on April 21, 2022. Per this Court's prior recommendation (as adopted by Judge Van Tatenhove) Hedges was to complete six months of inpatient substance abuse treatment followed by six months of supervision. [DE 435]. Hedges had some difficultly at the inpatient treatment facility (see Hedges' letters to the Court at DE 453 and 462) and repeatedly requested modification of this condition. The District Court denied the request and required Hedges to complete at least 90 days of inpatient treatment before it could consider a modification. [DE 463]. Hedges completed the 90-day inpatient treatment without incident, and USPO requested a modification of his conditions to move Hedges to a halfway house and require the final three months of treatment to be on an outpatient basis. [DE 465]. The Court agreed and modified the conditions accordingly. [DE 465]. Unfortunately, only one month after commencing outpatient treatment, the treatment facility located 3.5 alleged buprenorphine tablets and a bottle of urine with a heat pack attached to it on Hedges' person.[3] He subsequently tested positive for buprenorphine and admitted to its use.[4] This conduct violated his first three mandatory conditions of supervision, which prohibited him from committing another violation of law, unlawfully possessing a controlled substance, and unlawfully using a controlled substance.

The Court conducted an initial appearance on the instant supervised release violations pursuant to FED. R. CRIM. P. 32.1 on August 26, 2022. [DE 470]. The Court advised Hedges of his constitutional rights, including his rule-based right to a preliminary hearing. FED. R. CRIM. P.

---

[3] Hedges does not have a prescription for buprenorphine. He has unlawfully used buprenorphine in the past, according to his Presentence Investigation Report.

[4] Hedges maintained the urine was not for the purpose of circumventing the drug screening, but rather, is something he puts on ulcers to heal them. The Court finds this claim dubious at best considering that there was a heat pack attached to the bottle of urine, presumably to keep it close to body temperature.

5

32.1(b)(1). Hedges competently, knowingly, voluntarily, and intelligently waived his right to a preliminary hearing and detention hearing. [DE 470]. At the final hearing on September 1, 2022, the Court found Hedges competent to enter a knowing, voluntary, and intelligent stipulation the charged violations. Thus, the Court found the United States established the violations pursuant to 18 U.S.C. § 3583(e).

### III.    ANALYSIS

The Court has evaluated the entire record and considered the arguments presented at the final hearing, the record concerning Hedges' violations, the presentence investigation report, and the factors set forth in 18 U.S.C. § 3583(e).

Hedges' admission of using buprenorphine is a Grade C violation. The criminal history category established at sentencing was a Category III. The parties agree that the United States Sentencing Guidelines ("Guidelines" or "USSG") propose a sentence of 5 to 11 months, with a statutory maximum of 24 months. See 18 U.S.C. § 3583(e)(3). Should Hedges' supervised release be revoked, the Court can re-impose an additional term of supervised release of up to 25 months and 13 days, less any term of imprisonment imposed upon revocation.[5]

In recommending a sentence, the Court must consider the nature and circumstances of Hedges' original conviction, the need for the sentence imposed to afford adequate deterrence to criminal conduct, protection of the public from further crimes of the defendant, whether the Court can provide the defendant with needed training, care, or treatment, and the Guidelines. *See* 18 U.S.C. § 3553 incorporated into § 3583(e); *See also United States v. Johnson*, 640 F.3d 195 (6th Cir. 2011).

---

[5] This reflects the statutory maximum of 36 months, minus the previously imposed terms of imprisonment upon revocation. 18 U.S.C. § 3583.

Hedges' original conviction involved a conspiracy to commit mail and wire fraud *committed while he was serving an unrelated state sentence.* Hedges admitted he was responsible for an intended loss of $444,435 because of his role in the conspiracy. The loss amount was significant, and the victims were his fellow inmates. Committing new crimes while incarcerated does not indicate rehabilitation from a criminal lifestyle.

The next two factors, deterring the defendant from committing further crimes, and protecting the public from further crimes committed by the defendant, are two sides of the same coin. Hedges has been incarcerated almost continuously since 1985; essentially, his entire adult life. Hedges' rocky supervised release record shows that the threat of prison is insufficient to deter him from violating his supervision, including, committing new crimes. The Court has exhausted its ability to deter Hedges' criminal behavior through the "stick" of incarceration or the "carrot" of drug treatment programs. The Court must consider, however, whether Hedges continues to pose a risk to the public safety. The Court comes to the unavoidable conclusion that Hedges' substance use does pose some risk to the public. Specifically, Hedges was arrested for driving under the influence in February 2021 and driving on a suspended license in August 2021. He also admitted to using methamphetamine in March 2021, and buprenorphine in August 2022. This history gives the Court great concern that Hedges may use substances and engage in conduct that puts him and others at risk, such as driving under the influence.

This concern is aggravated by the fact that Hedges has struggled with substance use for many years, as reflected in both his Presentence Investigation Report and his supervised release record. He reported using alcohol and marijuana since he was a teenager, and using Xanax, morphine, and/or heroin during his period of state incarceration, until 2013 when he began using

Suboxone.[6]  [*See* Presentence Investigation Report at 16].  Hedges has repeatedly represented to the Court that he has a substance use disorder that he would like to address through inpatient and outpatient treatment.  The Court has repeatedly heeded this request and ordered Hedges to complete substance use treatment.  And, though Hedges has yet to complete a full course of substance use treatment as ordered, the Court notes that Hedges successfully completed three months of intensive inpatient treatment prior to his outpatient treatment where he incurred this violation.

The Court must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." S*ee* 18 U.S.C. § 3553(a)(6).  The District Court imposed a 48-month term of imprisonment followed by a 3-year term of supervised release on his original conviction.  [DE 215].  This was at the lowest end of the guideline range of 46 to 57 months on the fraud charge, and 9 months below USPO's recommended sentence of 57 months.  Likewise, the Court considers Hedges' prior sentences upon revocation.  Hedges' Guidelines range for his first set of supervised release violations was 8 to 14 months imprisonment, but the Court sentenced him to a term of imprisonment not to exceed 30 days (until inpatient treatment was available).  Hedges' Guidelines range for his second set of supervised release violations was 5 to 11 months imprisonment, but once again, the Court opted for a significantly lower sentence of time served (approximately two months).  Hedges' Guidelines range for his third set of supervised release violations was again 5 to 11 months, and the Court sentenced him 8 months' imprisonment, the middle of the range.  All three times, Hedges was

---

[6] Suboxone is the brand name of one of the drugs that includes buprenorphine as its active ingredient.  *Buprenorphine*, SUBSTANCE ABUSE AND MENTAL HEALTH SERV. ADMIN., https://www.samhsa.gov/medication-assisted-treatment/medications-counseling-related-conditions/buprenorphine (last visited Sept. 23, 2022).

8

required to complete an inpatient substance use treatment program, and all three times, Hedges failed to complete the program.

In his allocution, Hedges reiterated his desire to attain sobriety, discussed his struggle with substance use, and noted that it is not uncommon for those on a sobriety journey to have relapses and setbacks. The Court agrees, and remains confident that with sufficient effort and support, Hedges can successfully break free of his substance use. However, the Court also has the duty to protect the public from Hedges' conduct and punish his abuse of the Court's trust while on supervision.

Having once again reviewed Hedges' background in the Presentence Investigation Report and his supervision history, and considered his statements during allocution, it is clear that Hedges' background, struggle with substance use, and nearly lifetime of incarceration has contributed to his difficulties complying with the terms of his supervision. At this point, however, the Court has exhausted its options. Additional supervision may be of little utility if it only serves to keep Hedges in the current loop of supervision-violation-revocation-incarceration-supervision. The Court is unconvinced that another term of supervision will be successful or serve any of the purposes listed in § 3553 as incorporated in § 3583.

Considering all issues and factors discussed above, the Court recommends the District Court revoke Hedges' term of supervision and sentence him to eight months' imprisonment. This is the middle of the Guidelines range, which reflects the fact that the actual violation at issue is a Grade C, far less serious than a Grade A or B, and less serious than some of Hedges' prior violations. However, this recommendation also reflects the fact that Hedges has repeatedly violated his supervision—and the Court's trust—in the past two years, and that the Court has repeatedly offered leniency in an effort to encourage Hedges' compliance, sobriety, and success

in re-entering society after nearly three decades of incarceration. The Court finds this sentence is sufficient but not greater than necessary to punish Hedges' conduct in violating his supervised release, protect the public from further crimes, and provide him with an opportunity to finally have a fresh start, free from the threat of going back to prison.

Over the past two years, the Court has had the opportunity to get to know Hedges, learn about his weaknesses and struggles, listen to him describe his physical and emotional pain, and hear him recount of some of the agonizing circumstances that have presented themselves in his life. The Court has also witnessed Hedges' candor and resiliency. The Court is certain that it only understands a small fraction of the complexities of any defendant's life, and that was never truer than for Hedges. This recommendation is not the Court "giving up" on Hedges, nor is it is the Court losing faith in Hedges' ability to maintain sobriety and live a meaningful, productive life. Rather, the Court has limited resources with which to assist Hedges, and it has exhausted those resources. Despite the adversity that may have led to some of Hedges' poor choices, the law requires Hedges answer for his conduct. His best opportunity for a new life is to serve a final prison sentence and put this chapter behind him permanently.

### IV.   CONCLUSION

Accordingly, for the reasons stated herein, the Court **RECOMMENDS**:

(1) Hedges be found guilty of all violations;

(2) Hedges' supervised release be **REVOKED**;

(3) Eight (8) months of incarceration; and

(4) No supervision to follow.

Hedges preserved his right of allocution. Absent a waiver of allocution, this matter will be placed on Judge Van Tatenhove's docket for an allocution hearing upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Per the parties' agreement to a shortened objection period, within THREE DAYS after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Entered this 23rd day of September, 2022.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY